DA 22-0696

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 77N

IN THE MATTER OF:

D.A., L.A., and F.A.,

  Youths in Need of Care.

APPEAL FROM:   District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow,
Cause Nos. DN-19-72, DN-19-73, and DN-19-74
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

   Laura Reed, Attorney at Law, Missoula, Montana
(for Father)

   Gregory Dee Birdsong, Attorney at Law, Santa Fe, New Mexico
(for Mother)

  For Appellee:

   Austin Knudsen, Montana Attorney General, Bjorn E. Boyer, Assistant
Attorney General, Helena, Montana

   Eileen Joyce, Butte-Silver Bow County Attorney, Butte, Montana

      Submitted on Briefs: July 26, 2023

        Decided: April 9, 2024

Filed:

   _____
       Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and is not precedent. The case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Respondents T.S. (Mother) and A.A. (Father) respectively appeal the November 2022 judgments of the Montana Second Judicial District Court, Butte-Silver Bow County, terminating their respective parental rights to their minor children (D.A., L.A., and F.A.) pursuant to § 41-3-609(1)(f), MCA.[1] We affirm.

¶3 The Child and Family Services Division of the Montana Department of Health and Human Services (Department) most recently became involved with this family in August 2019, when five-year-old D.A. and three-year-old L.A. were found roaming the streets in Butte, Montana, unsupervised for over an hour.[2] Law enforcement later located Father at the family home sleeping in bed with two-month-old F.A. while Mother was at work. Father was apparently impaired due to marijuana use. A week later, D.A. and L.A. were again found roaming the streets alone for over an hour. This time, Mother claimed she put the children down for a nap, she then fell asleep with infant F.A., and that D.A. and L.A.

---

[1] The separate cases for each child, DA 22-0696, DA 22-0697, and DA 22-0698, are consolidated for appeal.

[2] The Department was previously involved with this family in 2016, and frequently thereafter, based on alleged or apparent child abuse or neglect including, *inter alia*, parental inability to meet the children's basic needs, domestic violence, and four-year-old D.A's hospitalization due to ingestion of the prescription drug Prozac.

"snuck out" while she was sleeping. In August 2019, the Department removed and placed all three children in a protective kinship placement and petitioned for emergency protective services, adjudication of the children as youths in need of care (YINC), and for temporary legal custody (TLC) under Title 41, chapter 3, MCA. Upon service of the petitions and issuance of preliminary protective and scheduling orders, the parents appeared with their respective court-appointed counsel and stipulated to adjudication of the children as YINC as defined by § 41-3-102(36), MCA, based on the uncontested factual averments in the petitions. The District Court thus: (1) adjudicated the children as YINC as defined by § 41-3-102(36), MCA; (2) granted the Department TLC pursuant to §§ 41-3-438(1), (3)(f)(i), and -442, MCA; and (3) imposed separate reunification-oriented treatment plans on each parent by stipulation pursuant to §§ 41-3-438(1), (3)(g)-(h), and -443, MCA. The court later granted three stipulated six-month TLC extensions to afford each parent additional time to successfully complete all treatment plan requirements.

¶4 As of early January 2022, neither parent had successfully completed all of their respective treatment plan requirements, thus causing the Department to transition to court-ordered guardianships as the new permanency plan for the children instead of parental reunification. In support of the proposed permanency plan change, the Department asserted, *inter alia*, that the parents had yet to complete their respective treatment plan requirements, had failed to demonstrate significant improvement in their respective abilities to adequately parent, and thus still did not have "adequate parenting abilities to safely parent" the children. Over Mother's objection that it was failing to make

3

reasonable reunification efforts, the Department indefinitely suspended parental visitation with L.A. and F.A. in March 2022 due to the emotional distress they experienced as a result. At the permanency plan hearing, neither parent disputed the Department's assessment of their incomplete treatment plan compliance, nor objected that it had not made reasonable reunification efforts up to that point.

¶5 On March 16, 2022, the Department petitioned for a fourth six-month TLC extension, but later petitioned for termination of parental rights under § 41-3-609(1)(f), MCA (treatment plan non-compliance and failure), on March 30th. The petitions alleged that: (1) termination was statutorily presumed to be in the best interests of the children because they had been in out-of-home protective placement for 28 months;[3] (2) the parents' reunification-oriented treatment plans had respectively failed to due to their respective failures to successfully complete all treatment plan requirements; (3) each parent thus remained unfit, unable, or unwilling to provide adequate parental care; and (4) each parent's continuing condition of unfitness was unlikely to change within a reasonable time. Following a contested hearing in August and September 2022, the District Court issued findings of fact, conclusions of law, and judgments terminating the parents' respective parental rights pursuant to § 41-3-609(1)(f), MCA. Based on various supporting findings, it made ultimate findings of fact under §§ 41-3-604(1), -609(1)(f), (2), and (3), MCA.

---

[3] *See* § 41-3-604(1), MCA (termination presumed to be "in the best interests of the child" where child has been in State's physical custody "for 15 of the most recent 22 months").

4

¶6 Parents have implied fundamental constitutional rights to the exclusive "care and custody" of their children "which must be protected by fundamentally fair procedures." *In re A.T.*, 2003 MT 154, ¶ 10, 316 Mont. 255, 70 P.3d 1247. District courts have discretion to terminate parental rights due to child abuse or neglect pursuant to § 41-3-609(1)(f), MCA. The procedure and substantive criteria specified by Title 41, chapter 3, part 6, MCA, for termination of parental rights due to child abuse or neglect provide fundamentally fair due process protections of the constitutional rights of parents to the custody and care of their children. *See In re B.N.Y.*, 2003 MT 241, ¶ 21, 317 Mont. 291, 77 P.3d 189; *In re D.H.*, 2001 MT 200, ¶ 14, 306 Mont. 278, 33 P.3d 616. We review parental rights terminations under § 41-3-609(1)(f), MCA, for an abuse of discretion under the statutory criteria at issue in each case. *In re D.E.*, 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586; *In re K.A.*, 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478; *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. An abuse of discretion occurs if the court terminates parental rights based on a clearly erroneous finding of fact, an erroneous conclusion or application of law, or exercises granted discretion arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice. *See In re D.E.*, ¶ 21; *In re K.A.*, ¶ 19. We review lower court factual findings only for clear error, and conclusions and applications of law de novo for correctness. *In re L.N.*, 2014 MT 187, ¶ 12, 375 Mont. 480, 329 P.3d 598. A finding of fact is clearly erroneous only if not supported by substantial evidence or, upon our independent review, the record clearly

manifests that the lower court misapprehended the effect of the evidence or was otherwise mistaken. *In re N.R.A.*, 2017 MT 253, ¶ 10, 389 Mont. 83, 403 P.3d 1256; *In re D.H.*, ¶ 14.

¶7 Here, on various grounds, both parents assert that the District Court erroneously terminated their respective parental rights based on findings of fact not supported by clear and convincing evidence as required by § 41-3-609, MCA. As a preliminary matter, the District Court made all ultimate findings of fact required under § 41-3-609(1)(f) and (2), MCA. District courts have broad discretion to determine the credibility, veracity, and probative value of evidence, including the relative credibility, veracity, and probative value of any conflicting evidence. *In re Marriage of Bliss*, 2016 MT 51, ¶¶ 15-21, 382 Mont. 370, 367 P.3d 395. Moreover, partial compliance with treatment plan requirements is insufficient to preclude termination under § 41-3-609(1)(f), MCA. *In re D.A.*, 2008 MT 247, ¶ 22, 344 Mont. 513, 189 P.3d 631. The record manifests that both parents had ample opportunity to comply with all requirements of their respective treatment plans, and thus demonstrate substantially improved knowledge and ability to adequately parent their children, including attendance to their physical and emotional needs, but did not.

¶8 Upon our review, the District Court's findings of fact are manifestly supported by substantial record evidence, regardless of any conflicting evidence. We further find no basis upon which to conclude that the court clearly misapprehended the effect of the evidence or was otherwise mistaken. The parents have thus failed to meet their respective appellate burdens of demonstrating that any material District Court finding of fact was clearly erroneous, or that the supporting evidence upon which they were based was

6

insufficient to constitute clear and convincing evidence. We hold that the District Court correctly terminated the parents' respective parental rights under § 41-3-609(1)(f), MCA.

¶9 On various grounds, both parents further assert that the District Court erroneously terminated their respective rights without clear and convincing evidence that the Department made reasonable family preservation and reunification efforts as required by § 41-3-423, MCA. The Department has a duty to make reasonable good faith family preservation and reunification efforts in the exercise of its authority under Title 41, chapter 3, parts 4-5, MCA. Section 41-3-423(1)(a) and (b)(i), MCA. However, § 41-3-423, MCA, does not require it to make every conceivable or possible effort, or to provide every conceivable or available manner of care or service, that might be of beneficial assistance to aid parents in successfully completing their treatment plans or otherwise avoiding termination of parental rights. *See In re J.O.*, 2015 MT 229, ¶¶ 25-28, 380 Mont. 263, 354 P.3d 1242; *In re B.J.J.*, 2019 MT 129, ¶ 24, 396 Mont. 108, 433 P.3d 488. Parents have their own reciprocal responsibilities, moreover, to avail themselves of services and assistance offered by the Department, and to meaningfully engage in good faith, with reasonable concerted effort, to successfully complete reunification-oriented treatment plans in cooperation with the Department. *See In re R.J.F.*, 2019 MT 113, ¶ 38, 395 Mont. 454, 443 P.3d 387. *See also* § 41-3-423(1)(b)(i), (vi), and (c), MCA ("health and safety" of the child is "of paramount concern" in Department provision of reasonable "preservation or reunification services" and efforts).

¶10 The "reasonable efforts" requirement of § 41-3-423, MCA, "is not a separate requirement for termination" of parental rights, but rather "a predicate" consideration, *inter alia*, regarding the requisite finding of fact under § 41-3-609(1)(f)(ii), MCA ("conduct or condition" rendering a parent unfit, unwilling, or unable to parent "is unlikely to change within a reasonable time"). *In re R.J.F.*, ¶ 26. *See similarly In re C.K.*, 2022 MT 27, ¶ 40, 407 Mont. 329, 503 P.3d 1104; *In re D.B.*, ¶ 25. There is substantial record evidence here that, up until it transitioned to guardianships as the new permanency plan due to the parents' respective failures to successfully complete all treatment plan requirements, the Department was actively involved in the administration and monitoring of their respective treatment plan progress and compliance despite visitation interruptions occasioned by the associated emotional distress of the children. The Department's ultimate cessation of parental contact with the children, over two-and-a-half years post-removal in advance of petitioning for termination, did not undermine its significant reunification efforts up to that point, or any of the other substantial evidence supporting the District Court's ultimate findings of fact under § 41-3-609(1)(f) and (2), MCA. We hold that District Court did not terminate the parents' respective parental rights without clear and convincing evidence that the Department made reasonable family preservation and reunification efforts as required by § 41-3-423, MCA.

¶11 Father asserts that the District Court erroneously admitted child hearsay statements through the hearing testimony of therapists Allison Brown and Jolynn Browning. Brown testified, *inter alia*, that L.A. told her that her sister D.A. "was put in [a] bag" and

"left . . . at home." Browning testified, *inter alia*, that D.A. told her that Father "touched [her] no-no box."[4] Father further asserts that the District Court "erred in finding that the sexual abuse allegations were proven by clear and convincing evidence."[5] Construing the record in the light most favorable to the judgment in accordance with the presumption of correctness on appeal, the record appears to indicate, albeit unclearly, that the District Court overruled Father's preserved hearsay objections on the ground that those out-of-court statements were admissible not for the truth of the matter asserted, but as definitional non-hearsay under M. R. Evid. 702, 703, and 801(c) for the purpose of explaining the bases of the opinion testimony of the respective child therapists regarding the observed fear and distress experienced by the children in Father's presence. *See, e.g.*, *In re G.M.*, 2024 MT 49, ¶¶ 14-15, 415 Mont. 399, __ P.3d __ (citing *inter alia In re C.K.*, 2017 MT 69, ¶¶ 18-29, 387 Mont. 127, 391 P.3d 735). If so, the District Court correctly recognized that the proffered non-hearsay purpose was relevant to the disputed question of fact under

---

[4] For the first time on appeal, Father asserts similar error regarding: (1) Brown's earlier testimony that D.A. told her that Father "touched her pee-pee"; (2) Browning's earlier testimony that L.A. told her that Mother and Father both "touched her 'no-no box'"; and (3) a Department social worker's testimony regarding a multitude of similar statements purportedly made by one or both of those children. Father further asserts, for the first time on appeal, that the District Court erroneously permitted Department witnesses to "vouch for the credibility of the child hearsay." However, Father waived those new assertions of error by failing to contemporaneously object below, and has not demonstrated plain error.

[5] Mother asserts all of the same errors asserted by Father but, by merely incorporating his briefing by reference, has failed to perfect them for review on appeal. *See* M. R. App. P. 12(1)(g); *State v. Ferguson*, 2005 MT 343, ¶¶ 40-43, 330 Mont. 103, 126 P.3d 463. We thus limit our review to Father's preserved assertions of error.

9

§ 41-3-609(1)(f)(ii), (2), and (3), MCA, as to whether the children would feel safe and secure if returned to the custody of their parents.

¶12 For two distinct reasons, however, we need not further address Father's preserved assertions of error. First, contrary to Father's allegation here, the District Court made no finding as to the truth or accuracy of the disputed out-of-court statements of the children regarding abuse. It found only that "the children have disclosed inappropriate sexual touching" and that D.A. "reported inappropriate sexual contact" with Father. Second, even if the disputed out-of-court statements to which Father objected were excised from the record as inadmissible hearsay, *arguendo*, the Court's ultimate and supporting findings of fact under § 41-3-609(1)(f), MCA, would still be independently supported by similar out-of-court statements attributed to the children in prior testimony to which he did not object, observational assessments of the subject children's emotions to which the therapists testified without reference to those statements, and other supporting record evidence. Thus, Father's preserved assertions of hearsay-based error were at most harmless error, if any. *See* M. R. Evid. 103(a).

¶13 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. For the foregoing reasons, we hold that neither parent has demonstrated that the District Court erroneously terminated his or her parental rights under § 41-3-609(1)(f), MCA. Affirmed.

/S/ DIRK M. SANDEFUR

10

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE